## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

LEAH AUTAR,

                Plaintiff,

    v.

KILOLO KIJAKAZI,

               Defendant.

CIVIL ACTION NO. 3:22-CV-01347

(MEHALCHICK, M.J.)

### MEMORANDUM

This is an action brought under Section 1383(c) of the Social Security Act and 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security (hereinafter, "the Commissioner") denying Plaintiff Leah Autar ("Autar")'s claims for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act. (Doc. 1). The parties have consent to proceed before the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 19). For the reasons expressed herein, and upon detailed consideration of the arguments raised by the parties in their respective briefs, the Commissioner's decision shall be affirmed.

### I.   BACKGROUND AND PROCEDURAL HISTORY

On June 18, 2015, Plaintiff Autar protectively filed applications for Title II and Title XVI benefits alleging disability beginning June 2, 2015, due to scoliosis/back problems, headaches, and depression. (Doc. 15-2, at 29). The Social Security Administration initially denied Autar's application and upon reconsideration, prompting Autar's request for a hearing on April 6, 2016. (Doc. 15-3, at 51). A review of the record by the Appeals Council indicated that the request for hearing provided a Florida address, and that the notice of hearing and

notice of hearing reminder were sent to this address. (Doc. 15-3, at 51). After filing the request for hearing, Autar moved to Pennsylvania in August of 2017, and the December 13, 2017, notice of dismissal was sent to her Pennsylvania address. (Doc. 15-3, at 51). Two days later, on December 15, 2017, a notice was sent to Autar at the Pennsylvania address advising that a hearing would be scheduled in the next nine months. (Doc. 15-3, at 51). In a notice to show cause for failure to appear, and in other correspondence following the dismissal, Autar asserted that she had attempted to update her address by phone and by visiting her new local Social Security Administration ("SSA") Field Office in Pennsylvania in March 2017 and that she was told by a field office employee by phone that her address had been updated. (Doc. 15-3, at 51). On review of the Administrative Law Judge ("ALJ")'s dismissal, the Appeals Council determined that since the notice of dismissal and the notice of planned hearing were sent to the Pennsylvania address, it demonstrates that the SSA had access to her updated address. (Doc. 15-3, at 50-51). As a result, the Appeals Council found that Autar's request for hearing should not have been dismissed when the notices of hearing were all sent to the prior Florida address. (Doc. 15-3, at 51). Therefore, the Appeals Council granted Autar's request for review, vacated the ALJ's order of dismissal, and remanded this case for further proceedings. (Doc. 15-3, a 50-51).

ALJ Timothy Wing held a hearing on August 25, 2020, and reconvened the hearing on April 13, 2021, where Autar proceeded without representation and a vocational expert ("VE") provided testimony. (Doc. 15-2, at 42, 72). In a written opinion dated May 5, 2021, the ALJ determined that Autar was not disabled and therefore not entitled to the benefits sought. (Doc. 15-2, at 35). On November 22, 2022, the Appeals Council denied Autar's request for review. (Doc. 15-2, at 6).

On August 29, 2022, Autar, proceeding *pro se*, filed the instant action. (Doc. 1). The Commissioner responded on November 9, 2022, providing the requisite transcripts from the disability proceedings. (Doc. 14; Doc. 15). The parties then filed their respective briefs, with Autar alleging one main error warranted reversal or remand. (Doc. 16; Doc. 18).

II.   **STANDARD OF REVIEW**

In order to receive benefits under Title II or Title XVI of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To satisfy this requirement, a claimant must have a severe physical or mental impairment[1] that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). Additionally, to be eligible to receive benefits under Title II of the Social Security Act, a claimant must be insured for disability insurance benefits. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131.

A.   <u>ADMINISTRATIVE REVIEW</u>

In evaluating whether a claimant is disabled as defined in the Social Security Act, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the Commissioner must determine, in sequence:

---

[1] A "physical or mental impairment" is defined as an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

(1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment;[2] (4) whether the claimant is able to do past relevant work, considering his or her residual functional capacity ("RFC"); and (5) whether the claimant is able to do any other work that exists in significant numbers in the national economy, considering his or her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a), 416.920(a). The claimant bears the initial burden of demonstrating a medically determinable impairment that prevents him or her from doing past relevant work. 20 C.F.R. §§ 404.1512(a), 416.912(a). Once the claimant has established at step four that he or she cannot do past relevant work, the burden then shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform that are consistent with his or her RFC, age, education, and past work experience. 20 C.F.R. §§ 404.1512(f), 416.912(f).

B. JUDICIAL REVIEW

In reviewing the Commissioner's final decision denying a claimant's application for benefits, the Court's review is limited to determining whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 1383(c)(3) (incorporating 42 U.S.C. § 405(g) by reference); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v.*

---

[2] An extensive list of impairments that warrant a finding of disability based solely on medical criteria, without considering vocational criteria, is set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1 (effective June 12, 2015, through July 19, 2015).

*Underwood*, 487 U.S. 552, 565 (1988) (internal quotations omitted). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, however, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

The question before the Court, therefore, is not whether Autar is disabled, but whether the Commissioner's finding that Autar is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues decided by the Commissioner.").

C. *PRO SE* CLAIMANT

Regarding the duties of an ALJ towards an unrepresented claimant, the Third Circuit

in *Vivaritas v. Comm'r of Soc. Sec.* instructs:

> Though a claimant does not have a constitutional right to counsel at a social
> security disability hearing, she does have a statutory and regulatory right to
> counsel at such a hearing. 42 U.S.C. § 406; 20 C.F.R. § 404.1705. The claimant
> must be given notice of the right to counsel and can waive this right only by a
> knowing and intelligent waiver. *See, e.g., Smith v. Schweiker*, 677 F.2d 826, 828
> (11th Cir. 1982). Moreover, where a claimant is pro se, the ALJ has a duty to
> help the claimant develop the administrative record and "must scrupulously
> and conscientiously probe into, inquire of, and explore for all the relevant
> facts." *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003) (internal quotations
> omitted). Although an ALJ may deny a *pro se* claimant benefits, it is appropriate
> for a reviewing court to remand a case if there is "a showing of clear prejudice
> or unfairness at the administrative hearing." *Dobrowolsky v. Califano*, 606 F.2d
> 403, 407 (3d Cir. 1979); *see also Livingston v. Califano*, 614 F.2d 342, 345 (3d Cir.
> 1980) ("[I]f it is clear that the lack of counsel prejudiced the claimant or that
> the administrative proceeding was marked by unfairness due to the lack of
> counsel, this is sufficient for remand, or reversal."). A determination of whether
> the claimant waived the right to counsel knowingly and intelligently determines
> who has the burden of demonstrating whether remand is appropriate. As the
> Court of Appeals for the Seventh Circuit has explained, "[i]f the ALJ does not
> obtain a valid waiver of counsel, the burden is on the Commissioner to show
> the ALJ adequately developed the record." *Skinner v. Astrue*, 478 F.3d 836, 842
> (7th Cir. 2007).

> *Vivaritas v. Comm'r of Soc. Sec.*, 264 F. App'x 155, 157-58 (3d Cir. 2008).

III.   **THE ALJ'S DECISION**

In a decision dated May 5, 2021, the ALJ determined Autar "has not been under a

disability, as defined in the Social Security Act, from June 2, 2015, through the date of this

decision." (Doc. 15-2, at 35). The ALJ reached this conclusion after proceeding through the

five-step sequential analysis required by the Social Security Act. *See* 20 C.F.R. §§ 404.1520,

416.920(a). At the onset, the ALJ determined that Autar meets the insured status

requirements of the Social Security Act through March 31, 2022. (Doc. 15-2, at 28).

A. Step One

At step one, an ALJ must determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If a claimant is engaging in SGA, the Regulations deem them not disabled, regardless of age, education, or work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). SGA is defined as work activity— requiring significant physical or mental activity—resulting in pay or profit. 20 C.F.R. §§ 404.1572, 416.972. In making this determination, the ALJ must consider only the earnings of the claimant. 20 C.F.R §§ 404.1574, 416.974. Here, the ALJ determined Autar "engaged in [SGA] during the following periods: July 1, 2016 to December 31, 2016 and from April 1, 2019 to June 30, 2019." (Doc. 15-2, at 28). Thus, the ALJ found that Autar's work activity during the above-mentioned period disqualify her for disability benefits for that time period, and as such, denied Autar's applications for benefits at step one. (Doc. 15-2, at 28-29). However, the ALJ noted that there has been a continuous 12-month period(s) during which Autar did not engage in SGA, so the ALJ's analysis proceeded to step two. (Doc. 15-2, at 29).

B. Step Two

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is severe or a combination of impairments that are severe. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ determines that a claimant does not have an "impairment or combination of impairments which significantly limits [their] physical or mental ability to do basic work activities, [the ALJ] will find that [the claimant] does not have a severe impairment and [is], therefore not disabled." 20 C.F.R. §§ 1520(c), 416.920(c). If a claimant establishes a severe impairment or combination of impairments, the analysis continues to the third step. Here, the ALJ found that the medical evidence of record

- 7 -

established the presence of the following medically determinable severe impairments: "spinal disorder including degenerative disc disease and scoliosis." (Doc. 15-2, at 29).

### C. STEP THREE

At step three, the ALJ must determine whether the severe impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in the version of 20 C.F.R. § Pt. 404, Subpt. P, App. 1 that was in effect on the date of the ALJ's decision. 20 C.F.R. §§ 404.1520(a)(4)(iii); 404.1525; 404.1526; 20 C.F.R. §§ 416.920(a)(4)(iii); 416.925; 416.926. The sections in this appendix are commonly referred to as "listings." If the ALJ determines that the claimant's impairments meet these listings, then the claimant is considered disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d). Here, the ALJ determined that none of Autar's impairments, considered individually or in combination, met or equaled a Listing. (Doc. 15-2, at 29). Specifically, the ALJ considered Listings 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root(s)) and 1.16 (lumbar spinal stenosis resulting in compromise of the cauda equina). (Doc. 15-2, at 29-30).

### D. RESIDUAL FUNCTIONAL CAPACITY

Between steps three and four, the ALJ determines the claimant's residual functional capacity ("RFC"), crafted upon consideration of the medical evidence provided. Autar alleged that her impairments caused the following symptoms: back problem; headaches; depression; inability to lift, squat, bend, stand, reach, walk, sit, kneel, and climb stairs; and severe pain from her neck to lower back. (Doc. 15-2, at 30-31). After examining her statements and the medical evidence, the ALJ found that Autar's impairments could reasonably be expected to cause the alleged symptoms, Autar's statements about the intensity, persistence, and the limiting effects of the symptoms were not entirely consistent with the medical

- 8 -

evidence and other evidence in the record. (Doc. 15-2, at 31). The ALJ then went on to detail Autar's medical records and treatment history, activities of daily living, and medical opinion evidence. (Doc. 15-2, at 31-33). Considering all evidence in the record, the ALJ determined that Autar had the RFC "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b),"[3] subject to the following non-exertional limitations: "[Autar] is limited to no more than frequent postural maneuvers, such as balancing, stooping, kneeling, crawling, crouching, and climbing on ramps and stairs; and may occasionally climb ladders, ropes, and scaffolds." (Doc. 15-2, at 30).

E.  STEP FOUR

Having assessed a claimant's RFC, at step four the ALJ must determine whether the claimant has the RFC to perform the requirements of their past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). A finding that the claimant can still perform past relevant work requires a determination that the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Past relevant work is defined as work the claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn how to do it. 20 C.F.R. §§ 404.1560(b), 416.960(b). If the claimant cannot perform past relevant work or has no past relevant work, then the analysis proceeds to the fifth step. 20 C.F.R. §§ 404.1565, 416.965.

---

[3] The limitation to "light work" "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b). A job will fall under this category if it requires lifting little weight, yet a good deal of walking or standing, or mostly sitting with some pushing and pulling of arm or leg controls. 20 C.F.R. §§ 404.1567(b), 416.967(b). An individual considered capable of performing a full range of light work must be able to do substantially all of these activities. 20 C.F.R. §§ 404.1567(b), 416.967(b).

The ALJ determined Autar is capable of performing past relevant work as a customer service representative/user support analyst, which is a sedentary, skilled position, with a Specific Vocational Preparation ("SVP") of 6. (Doc. 15-2, at 33). The ALJ explained that this work does not require the performance of work-related activities precluded by Autar's RFC and noted that the VE testified that Autar could perform this past relevant work. (Doc. 15-2, at 33). Nevertheless, the ALJ proceeded to step five of the sequential analysis.

F. STEP FIVE

At step five of the sequential analysis process, an ALJ considers the claimant's age, education, and work experience to see if a claimant can make the adjustment to other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). These factors are not considered when evaluating a claimant's ability to perform past relevant work. 20 C.F.R. §§ 404.1560(b)(3), 416.960(b)(3). If a claimant has the ability to make an adjustment to other work, they will not be considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Here, the ALJ made vocational determinations that Autar was 34 years old on the alleged onset date, defined as a younger individual age 18-49 by the Regulations. 20 C.F.R. §§ 404.1563, 416.963. (Doc. 15-2, at 34). The ALJ also noted that Autar "has at least a high school education" as considered in 20 C.F.R. §§ 404.1564, 416.964. (Doc. 15-2, at 34). The ALJ determined that "there are other jobs that exist in significant numbers in the national economy that the claimant also can perform, considering [Autar]'s age, education, work experience, and [RFC]." 20 C.F.R. §§ 404.1569; 404.1569(a); 20 C.F.R. §§ 416.969; 416.969(a). (Doc. 15-2, at 34). The ALJ specifically identified occupations of office assistant, rental clerk, and counter clerk/storage facility clerk, which are occupations with open positions ranging from 17,000 to 29,000

nationally. (Doc. 15-2, at 35). As a result of this analysis, the ALJ determined that Autar was

not disabled and denied her applications for benefits. (Doc. 15-2, at 35).

IV.   **DISCUSSION**

Autar advances one main argument on appeal. Autar argues that the ALJ erroneously

denied her claim despite "substantial evidence of disability." (Doc. 16, at 1). Autar asserts

that the Appeals Council erred in failing to accept the lumbar MRI that she underwent and

submitted several months after the ALJ issued his decision. (Doc. 16, at 1). In her letter filed

with the Court, Autar provides a description of her spinal conditions. (Doc. 17). In response,

the Commissioner contends the ALJ's decision should be affirmed because Autar "provides

neither legal authority nor persuasive factual proof that substantial evidence cannot support

the ALJ's conclusions." (Doc. 18, at 15). The Commissioner also argues that the ALJ

reasonably assessed and explained and RFC for a range of light work, and Autar's submission

of post-decision evidence is an impermissible attempt to rebut a decision that is supported by

substantial evidence. (Doc. 18, at 21).

A.   NEW EVIDENCE DOES NOT ESTABLISH A BASIS FOR REMAND.

Autar contends that a remand to the Commissioner is warranted based on new

evidence. The new evidence at issue consists of an MRI of the lumbar spine dated July 26,

2021, which Autar submits was delayed due to the COVID-19 pandemic. (Doc. 16, at 1).

According to Autar, the MRI showed evidence of several conditions, including desiccation,

conus medullaris, annular fissure or tear, ligamentum flavum, central stenosis, prominent

disc, osteophytes, and bilateral recess stenosis. (Doc. 17, at 1). Although Autar did not present

this MRI to the ALJ, she presented them to the Appeals Council. (Doc. 15-2, at 7). In its

decision dated November 22, 2021, the Appeals Council declined to exhibit the MRI, finding

that "this evidence does not show a reasonable probability that it would change the outcome of the decision." (Doc. 15-2, at 7).

"[E]vidence that was not before the ALJ cannot be used to argue that the ALJ's decision was not supported by substantial evidence." *Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001). But in limited circumstances, evidence that was not before the ALJ may be the basis for a remand to the Commissioner under Sentence Six of 42 U.S.C. § 405(g). *Matthews*, 239 F.3d at 592. Sentence Six provides, in pertinent part:

> The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]

> 42 U.S.C. § 405(g).

So-called "sixth-sentence remand is appropriate when the district court learns of evidence not in existence or available to the claimant at the time of the administrative proceeding that might have changed the outcome of that proceeding." *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990). Autar has not met the burden of making this showing.

In general, evidence is "new" if it was "not in existence or available to the Plaintiff at the time of the administrative proceeding" and not merely cumulative of the evidence of record. *Sullivan*, 496 U.S. at 626; *see also Melkonyan v. Sullivan*, 501 U.S. 89, 100 (1991); *Szubak v. Secretary of Health and Human Services*, 745 F.2d 831, 833 (3d Cir. 1984). Evidence is "material" if it is relevant and probative. *Szubak*, 745 F.2d at 833. An implicit materiality requirement is that the evidence must relate to the period for which benefits were denied, and there must be a reasonable probability that the additional evidence will change the outcome of the decision. *Szubak*, 745 F.2d at 833. As for the "good cause" requirement, "[u]nder

- 12 -

existing law the court itself . . . has discretionary authority 'for good cause' to remand the case back to the ALJ." *Melkonyan*, 501 U.S. 89, 100 (1991).

Contrary to Autar's contentions, the Court finds no basis for remand under sentence six of § 405(g). First, liberally construing the pleadings, Autar argues that the MRI is "new" because it was not in existence at the time the ALJ issued his decision on May 5, 2021. (Doc. 16, at 1). Second, Autar appears to argue that the MRI is "material" because it established "why [Autar has] been suffering all this time." (Doc. 17, at 1). Third, Autar attempts to demonstrate "good cause" for her failure to incorporate this evidence into the record prior to her disability hearing by stating that the "updated MRI . . . was delayed due to covid." (Doc. 16, at 1).

The Court finds that the new MRI is not material because it is not relevant to the period at issue and there is not a reasonable probability that it would have changed the ALJ's decision. The MRI was taken on July 26, 2021, approximately two months after the ALJ's decision. (Doc. 15-2, at 35; Doc. 16, at 1). Thus, the evidence was acquired after the ALJ's decision and is neither relevant nor probative in this case. *See Szubak*, 745 F.2d at 833 ("An implicit materiality requirement is that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition."). Further, as correctly stated by the Commissioner, Autar's presentation of the MRI does not include a specialist's opinion about her diagnoses or pain, and therefore cannot provide support for her alleged complaints during the relevant period. (Doc. 18, at 19); *see Phillips v. Barnhart*, 91 F. App'x 755, 780 (3d Cir. 2004) (finding that physician's opinion did not support existence of disabling limitations where "treatment notes are notably absent [of] any specific work-related

limitations."). Therefore, Autar has not established a reasonable probability that the new evidence would have changed the ALJ's decision. *See Szubak*, 745 F.2d at 833. Because Autar fails to satisfy the requirements of sentence six § 405(g), the Court finds no reason to disturb the ALJ's decision as to this matter.

B. SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S RFC.

On appeal, the Court is not free to substitute its independent assessment of the evidence for the ALJ's determinations. Rather, the Court must ascertain whether the ALJ's decision is supported by substantial evidence, a quantum of proof which is less than a preponderance of the evidence but more than a mere scintilla, *Richardson*, 402 U.S. at 401, and "does not mean a large or considerable about of evidence," *Pierce*, 487 U.S. at 565, but rather "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek*, 139 S. Ct. a 1154. Judged against these deferential standards of review, the Court finds that substantial evidence supported the ALJ's decision that Autar was not disabled.

With respect to Autar's objections to the decision by the ALJ, the Court is mindful of the fact that judicial review of the ALJ's decision is limited to determining whether the findings of the ALJ are supported by substantial evidence in the record. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Ficca*, 901 F. Supp. 2d at 536; *Johnson*, 529 F.3d at 200. In this context, substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce*, 487 U.S. at 565. Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson*, 402 U.S. at 401. Further, "the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason."

*Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quotation omitted). Therefore, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Cotter*, 642 F.2d at 706-707.

At the onset, the Court notes that, in the absence of prejudice or unfairness, as discussed below, the lack of counsel is not sufficient cause for remand. *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979). Next, to the extent that Autar claims the ALJ erroneously denied her case due to periodic earnings that exceed the SGA level, the Court finds that the issue has been waived. (Doc. 16, at 1-2). Autar offers no more than a passing reference to an issue, which is not sufficient to bring that issue before the Court. (Doc. 16, at 1-2); *see Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994) ("An issue is waived unless a party raises it in its opening brief, and for those purposes a passing reference to an issue . . . will not suffice to bring that issue before this court." (citation omitted)). Moreover, at step one, the ALJ noted that although Autar engaged in SGA for specific periods of time, the ALJ explicitly found that "there has been a continuous 12-month period(s) during which [Autar] did not engage in [SGA]," and continued to step two of the sequential analysis. (Doc. 15-2, at 29). Therefore, Autar's argument regarding step one of the ALJ's decision is meritless.

Moreover, the Court finds that substantial evidence supports the ALJ's unfavorable decision. Assessing a claimant's RFC falls within the purview of the ALJ. 20 C.F.R. §§ 404.1546(c), 416.946(c); SSR 96-8p, 1996 WL 374184 (S.S.A. July 2, 1996). "[RFC] is defined as that which an individual is still able to do despite the limitations caused by his or her

impairment(s).'" *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 (3d Cir. 1999)). Specifically, one's RFC reflects the most that an individual can still do, despite his or her limitations, and is used at steps four and five to evaluate the claimant's case. 20 C.F.R. §§ 404.1520, 404.1545, 416.920, 416.945; SSR 96-8P, 1996 WL 374184 at *2. In crafting the RFC, the ALJ must consider all the evidence of record, including medical signs and laboratory findings, daily activities, medical source statements, and a claimant's medical history. SSR 96-8p, 1996 WL 374184, at *5; *see also Mullin v. Apfel*, 79 F. Supp. 2d 544, 548 (E.D. Pa. 2000). An ALJ's RFC findings, however, must be supported by the medical evidence. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986). "[O]nce the ALJ has made this [RFC] determination, [a court's] review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence." *Black v. Berryhill*, No. 16-1768, 2018 WL 4189661 at *3 (M.D. Pa. Apr. 13, 2018). Applying this standard to the present record, the Court finds substantial evidence supports the ALJ's RFC determination as it pertains to the opinions of Loc Kim Le, M.D. ("Dr. Le").

In *Cotter v. Harris*, the Circuit Court clarified that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected: "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." 642 F.2d at 704, 706-707. However, the ALJ need not undertake an exhaustive discussion of all the evidence. *See, e.g., Knepp Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). "There is

no requirement that the ALJ discuss in her opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004).

In making the RFC determination, "the ALJ must consider all evidence before him" and "evaluate every medical opinion . . . receive[d]." *Burnett*, 220 F.3d at 121 (citations omitted); 20 C.F.R. § 404.1527(c); *see also Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) ("The Secretary must 'explicitly' weigh all relevant, probative and available evidence. . . . The Secretary may properly accept some parts of the medical evidence and reject other parts, but she must consider all the evidence and give some reason for discounting the evidence she rejects."). The Social Security Regulations define "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including … symptoms, diagnosis and prognosis, what [the claimant] can still do despite [his or her] impairment(s), and … physical or mental restrictions." 20 C.F.R. §404.1527(a)(2). Social Security Ruling ("SSR") 96-5p further clarifies that "opinions from any medical source on issues reserved to the Commissioner must never be ignored," and specifically states that the ALJ's "decision must explain the consideration given to the treating source's opinion(s)."[4] SSR 96-5p, 1996 WL 374183, at *3, *6 (July 2, 1996).

---

[4] SSRs are agency rulings published under the authority of the Commissioner and are binding on all components of the Social Security Administration. 20 C.F.R. § 402.35(b)(1). SSRs do not have the force and effect of the law or regulations but are to be "relied upon as precedents in determining other cases where the facts are basically the same." *Heckler v. Edwards*, 465 U.S. 870, 873, n.3 (1984).

SSR 96-6p addresses the weight afforded to treating medical sources, such as Dr. Le. SSR 96-6p, 1996 WL 374180 (July 2, 1996).[5] Because treating sources often have the closest ties to a claimant, their opinions are generally entitled to more weight. 20 C.F.R. § 404.1527(c)(2); 20 C.F.R. § 416.927(c)(2). Under certain circumstances, the medical opinion of a treating source may even be entitled to controlling weight. *See* 20 C.F.R. § 404.1527(c)(2); 20 C.F.R. § 416.927(c)(2); *see also* SSR 96-2p, 1996 WL 374188 at *1. A treating physician's opinion warrants controlling weight where the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); 20 C.F.R. § 416.927(c)(2). On the other hand, a treating source's opinion may be rejected "only on the basis of contradictory medical evidence . . . ." *Plummer v. Apfel,* 186 F.3d 422, 429 (3d Cir. 1999). Thus, even if a treating source's medical opinion is not entitled to controlling weight, it still may be entitled to significant deference. SSR 96-2p, 1996 WL 374188 at *4.

Upon establishing that a treating source's opinion is not entitled to controlling weight, an ALJ must weigh the opinion "using all of the factors provided in 20 CFR 404.1527 and 416.927," which are also used for evaluating opinions by non-treating and non-examining medical sources. SSR 96-2p, 1996 WL 374188 at *4. These factors include: (1) the examining relationship; (2) the treatment relationship, including its length and nature; (3) the supportability of the medical source's opinions; (4) consistency; (5) specialization; and (6) other relevant factors. 20 C.F.R. § 404.1527(c); 20 C.F.R. § 416.927(c)(2); *see also* SSR 96-6p,

---

[5] SSR 96-6p was published and became effective on July 2, 1996. Although since rescinded and replaced by SSR 17-2p, SSR 96-6p was in effect at the time the ALJ rendered his decision that is now before this Court.

1996 WL 374180 at *2 ("The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker."). Further, 20 C.F.R. § 404.1527(c)(2) and 20 C.F.R. § 416.927(c)(2) require that the Commissioner "will always give good reasons in [his] notice of determination or decision for the weight [he] gives to [a claimant's] treating source's opinion." *See Cotter*, 642 F.2d at 704 (finding the ALJ's articulation of the weight accorded to each medical opinion must be accompanied by "a clear and satisfactory explication of the basis on which it rests."). "Where a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Plummer*, 186 F.3d at 429 (quoting *Mason*, 994 F.2d at 1066); *see also Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). As such, to allow for meaningful judicial review, it is the duty of the ALJ to explain the rationale for the weight afforded. *Plummer* , 186 F.3d at 429; *Burnett*, 220 F.3d at 119.

Here, the ALJ found that Autar could perform light work subject to certain non-exertional limitations. (Doc. 15-2, at 30). In making this determination, the ALJ considered all of the medical and opinion evidence in this case, as well as Autar's self-reported subjective symptoms and activities of daily living. (Doc. 15-2, at 30-33). Largely crediting Autar's assertions that she has some limitations performing her activities of daily living, the ALJ determined that while her medically determinable impairments could reasonably be expected to cause the alleged symptoms, Autar's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. (Doc. 15-2, at 31). The ALJ proceeded to review the medical evidence of record, including records from a 1999 car accident Autar was involved in, clinical findings of the spine, and a physical examination by Marie France Adam, M.D. ("Dr.

- 19 -

Adam"). (Doc. 15-2, at 31-32). The ALJ concluded that a review of the record as a whole does not support Autar's allegations concerning the intensity, persistence, and limiting effects of her symptoms and does not support greater limitations that those provided in Autar's RFC determination. (Doc. 15-2, at 32). Considering Autar's activities of daily living, the ALJ noted that she testified to limited activity; however, referencing contradictory testimony, the ALJ determined that "the record reflects activity inconsistent with her testimony." (Doc. 15-2, at 32). Thus, the ALJ concluded:

> Consistent with the foregoing, and as supported by the record with respect to her physical impairments, the residual functional capacity above accommodates [Autar]'s severe impairments by limiting her to light work. The residual functional capacity further adds postural limitations to guard against any exacerbations, and for her comfort. The result is that the record as a whole does not support any greater limitations than those outlined above.

(Doc. 15-2, at 32).

Next, the ALJ reviewed the State Agency physical assessment conducted by Dr. Le, who opined that Autar is limited to medium work, and gave it "little weight." (Doc. 15-2, at 32). The ALJ found that Dr. Le's assessment is not consistent with, or supported by the longitudinal record. (Doc. 15-2, at 32). Considering Autar's thoracic fusion in 1999, cervical MRI reflecting disc herniations and bulges, and a lumbar x-ray noting levoscoliosis, as well as Autar's ongoing complaints, treatment and findings on physical examination of limited range of motion, tenderness, and muscle spasm, the ALJ determined that Autar is only limited to "light work with the above postural limitations." (Doc. 15-2, at 32-33). Finally, the ALJ mentioned the opinion of a Single Decision Maker ("SDM"), who noted that there was insufficient evidence, the medical evidence of record is outdated and inconclusive, and there is no diagnosis available in the record pertaining to Autar's allegations. (Doc. 15-2, at 33).

- 20 -

However, in accordance with agency policy, the ALJ gave the SDM's assessment no weight. (Doc. 15-2, at 33). The ALJ concluded that the above-mentioned RFC assessment "is supported by the record as a whole, including [Autar]'s treatment notes, and the reliable portions of [Autar]'s statements." The Court finds that the ALJ's discussion adequately encompassed the relevant evidence and further finds that substantial evidence supports the ALJ's RFC determination.

At the last stage of the sequential analysis, the ALJ concluded, given Autar's age, education, work experience, and RFC, that jobs exist in significant numbers in the national economy that he is able to perform, such as rental clerk, counter clerk, office assistant, and Autar's past relevant work as a customer service representative/user support analyst. (Doc. 15-2, at 35). The testimony of the VE, upon which the ALJ relied is consistent with the ALJ's finding, specifically addressed Autar's limitations to work at the light exertional level and limitation to no more than frequent postural maneuvers. (Doc. 15-2, at 67). The ALJ asked the VE if her testimony was consistent with the Dictionary of Occupational Titles ("DOT") and the VE answered that it was, further explaining that her testimony pertaining to task persistence and climbing of ladders was based on her experience and literature review. (Doc. 15-2, at 66-69). An ALJ is required to accept only that testimony from the VE which accurately reflects a plaintiff's impairments. *See Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984); *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987). As set forth above, there is substantial evidence that the RFC included in the ALJ's hypothetical questions accurately reflected Autar's impairments. Consequently, the Court finds no error in this regard. Under these circumstances, the ALJ's reliance on the testimony of the VE was proper and is supported by substantial evidence.

The Court finds that the ALJ obtained medical evidence, took testimony, and afforded Autar a full and fair hearing. In light of the Court's overall examination of the record, the Court finds that substantial evidence support's the ALJ's unfavorable determination and will affirm the ALJ's decision.

V.    **CONCLUSION**

Based on the foregoing, the Commissioner's decision to deny Autar disability benefits is **AFFIRMED**, judgment is entered in favor of the Commissioner and against Autar, and the Clerk of Court is directed to **CLOSE** this case.

An appropriate Order follows.


Dated: September 13, 2023                    *s/ Karoline Mehalchick*
                                             **KAROLINE MEHALCHICK**
                                             **Chief United States Magistrate Judge**

- 22 -